IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CARL B.,[1]

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 6:18-cv-00864-AA
**OPINION AND ORDER**

AIKEN, Judge:

    Plaintiff Carl. B brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with the Court's opinion.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## BACKGROUND

On March 20, 2014, plaintiff applied for DIB and SSI. Plaintiff alleged disability beginning November 7, 2013, due to diabetes mellitus, vision problems, and neuropathy. After a hearing, the administrative law judge ("ALJ") determined that plaintiff was not disabled under the Act. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. This action followed.

## STANDARD OF REVIEW

A reviewing court shall affirm the decision of the Commissioner if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation marks omitted). To determine whether substantial evidence exists, the district court must review the administrative record as a whole, weighing both the evidence that supports and detracts from the decision of the ALJ. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## COMMISSIONER'S DECISION

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof falls to the claimant at steps one through four, and with the Commissioner at step five. *Id.*; *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001). At step five, the Commissioner must show that the claimant

can adjust to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.* If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante*, 262 F.3d at 953–54.

Here, the ALJ found that plaintiff was not disabled. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 7, 2013, his alleged onset date. At step two, the ALJ found that plaintiff had the following severe impairments: peripheral neuropathy, osteoarthrosis, degenerative disc disease, and diabetes mellitus with associated diabetic retinopathy and a vision impairment. At step three, the ALJ found that plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Before proceeding the step four, the ALJ determined that plaintiff's RFC allowed him to perform medium work as defined in 20 CFR § 404.1567 (c) and 416.967(c) with these limitations:

> [Plaintiff] is limited to lifting 50 pounds occasionally and 25 pounds frequently. He can stand and walk about six hours in an eight-hour day, and can sit about six hours in an eight-hour day. He must avoid exposure to workplace hazards such as machinery and heights. He cannot drive in a work setting. He can perform tacit required simple work place decisions.

Tr. 20-21.

At step four, the ALJ found that plaintiff could not perform any of his past relevant work. At step five, the ALJ found that based on plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could sustain substantial gainful employment despite his impairments. Specifically, the ALJ found that plaintiff could perform the jobs of Industrial Cleaner, Hospital Cleaner, and Hand Packager. As a result, the ALJ concluded that plaintiff was not disabled under the Act.

## DISCUSSION

Plaintiff contends that the ALJ erred in three ways in determining that he was not disabled. First, the ALJ failed to identify clear and convincing reasons supported by substantial evidence in the record to reject plaintiff's subjective symptom testimony. Second, the ALJ failed to identify legally sufficient bases supported by substantial evidence in the record to reject the medical opinions of Edwin Weih, PA, and Alexander Moreley, MD. Third, the ALJ failed to identify legally sufficient bases supported by substantial evidence in the record to reject the competent lay witness statements of plaintiff's brother. The Court addresses each argument in turn.

### I.   *Plaintiff's Subjective Symptom Testimony*

Plaintiff argues that the ALJ failed to provide legally sufficient reasons to reject plaintiff's subjective symptom testimony, which plaintiff offered in a Functional Report, Tr. 246-53, and at his hearing before the ALJ.

In his Functional Report, plaintiff stated he can no longer engage in "hik[ing], hunting, fishing[,] driv[ing] a car, yard work, just normal everyday stuff[.]" Tr. 247.

He explained that his mother cleaned inside the house while he did the yardwork, both mowing the lawn and weeding. Plaintiff stated he experienced changes in his social life due to his impairments because his eyes didn't work well, his lower back did not let him lift or turn much, and his hands didn't work. Plaintiff alleges he can only lift 30 pounds without hurting. He reports that he can only walk one fourth of a mile before needing a five-to-ten-minute rest.

At the hearing, plaintiff testified that due to his neuropathy, he experiences burning, tingling, numbness, and pins and needles in his hands and feet. Plaintiff explained that the numbness in his feet was so severe that he has difficulties feeling his feet and it causes him to trip over things easily. Plaintiff reported that he no longer drives and watches only 30 minutes of TV due to vision difficulties. Plaintiff testified that his vision was blurry, and he sees double at a distance or when his eyes are tired. Plaintiff explained that sitting caused problems for him and that he needed to be either lying down flat or standing up. Plaintiff testified that he can use his hands for thirty minutes at a time. In an eight-hour day, plaintiff reported that he would need to rest his hands for at least ten minutes every hour. When questioned about his ability to work a light job with a sit/stand option, plaintiff explained that he would still be in pain and would still need frequent breaks. The ALJ questioned plaintiff about his diabetes treatment noncompliance and plaintiff testified that he had difficulties changing his routine but that he was "still trying to stay where [he] need[s] to be." Tr. 64.

The ALJ makes a credibility determination to assess the subjective symptom testimony of a claimant amidst a two-step process that, first, evaluates the existence of an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms and, second, addresses the intensity, persistence, and limiting effects of the alleged symptoms based on an examination of the entire record. 20 C.F.R §§ 404.1529(a), (c)(l); 416.929(a), (c)(l); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not "entirely consistent" with the record as a whole. Tr. 22. The ALJ reasoned that plaintiff's limitations were "not fully supported by his reported activities" and plaintiff's "very conservative" treatment and "continued unwillingness to adhere to treatment" suggested that plaintiff's limitations were not as debilitating as he described. Tr. 23.

///

///

### A. *Reported Daily Activities*

The ALJ discredited plaintiff's symptom testimony, in part because plaintiff's reported activities were not consistent with his alleged limitations. Specifically, the ALJ reasoned that

> claimant indicated that he could perform adequate self-care, care for his pet, prepare simple meals, perform yard work, and go out to the store. Moreover, the claimant admitted that he continued to engage in hobbies like rock hunting, hiking, camping. These activities indicate a higher level of function than alleged by the claimant.

Tr. 23 (internal citations omitted).

"Daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotation marks omitted). The ALJ must make specific findings about plaintiff's reported daily activities and their transferability to a work setting to sustain adverse credibility determination. *Id.* The ALJ may also consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina v. Astrue*, 674 F.3d 1111, 1112 (9th Cir. 2012). "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). The plaintiff "need not vegetate in a dark room in order to be

eligible for benefits." *Molina*, 674 F.3d at 1112-13 (internal quotation marks omitted).

Plaintiff's reported activities revolve around self-care and include household chores like cooking simple meals for himself, performing adequate self-care, caring for his pet, and occasionally going to the store and meeting with friends. The ALJ failed to explain how those activities contradict his other testimony, are transferrable to a work setting, or demonstrate an ability to spend a substantial part of the day engaged in such activities. The ALJ's determination lacks the specificity required to discredit plaintiff's subjective symptom testimony. *Orn*, 495 F.3d at 639.

The ALJ relied also on plaintiff's purported hobbies such as rock hunting, hiking, and camping which the ALJ determined he "continued to engage" in, despite plaintiff's testimony that he had not gone rock hunting in over a year because his disability had prevented him from doing so.[2] Tr. 23. The ALJ also failed to discuss how plaintiff's engagement in rock hunting, camping, and hiking indicates an ability to work or contradicts his symptom testimony, especially when at least one of these activities plaintiff no longer engages in.

In sum, ALJ has failed to provide specific, clear and convincing reasons supported by substantial evidence on why plaintiff's daily activities are inconsistent with his symptom testimony.

///

///

---

[2] The ALJ did not question plaintiff about hiking or camping and it is thus unclear whether plaintiff continues to engage in these activities.

## B. *Conservative Treatment*

As mentioned, the ALJ also discredited plaintiff's symptom testimony based on findings that plaintiff's treatment was "very conservative, largely over-the-counter." Tr. 23. The ALJ noted that plaintiff had tried the following treatments: "physical therapy, steroid injections, steroidal eye drops, gabapentin, ramipril, lantus, and insulin[,] . . . [and] over-the-counter and prescription pain medication." Tr. 22.

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). However, the ALJ must explain why the ALJ considers plaintiff's treatment to be conservative and what "more aggressive treatment" options were available. *Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1210 (D. Or. 2019) (quoting *Lapierre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)).

Here, the ALJ did not explain why he considered plaintiff's treatment to be "very conservative" aside from the treatment involving "largely over-the-counter and prescription medication." Tr. 23. The Ninth Circuit has also "previously doubted that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (internal quotation marks omitted and alterations normalized).

As a result, the ALJ's characterization of plaintiff's treatment as "conservative" is not supported by substantial evidence and does not suffice as a clear and convincing reason to reject his symptom testimony.

C. *Treatment Noncompliance*

Finally, the ALJ reasoned that plaintiff's pain and problems related to his diabetes was inconsistent with plaintiff's "continued unwillingness to adhere to treatment." Tr. 23.

In determining the credibility of claimant's subjective symptom testimony, an ALJ may properly consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Molina*, 674 F.3d at 1114. However, to deny benefits on this ground "the ALJ must specifically find based upon the record that the prescribed treatment can restore the claimant's ability to work." *Sivilay v. Comm'r of Social Sec.*, 32 Fed App'x 911, 914 (9th Cir. 2002); *see also* 20 C.F.R. § 416.930(a) ("you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work").

The ALJ did not make any findings about whether following plaintiff's prescribed treatment would restore his ability to work. Further, the physician's assistant treating plaintiff explained in a letter cosigned by Dr. Alexander Moreley that plaintiff's diabetes was "difficult to control" and plaintiff's condition was "lifelong" without any "significant resolution to any of [his conditions]." Tr. 500. As discussed below, the ALJ improperly discredited that medical opinion evidence and if the ALJ determines on remand that this opinion evidence is afforded a greater weight, must consider these statements.

Therefore, the ALJ's conclusions about plaintiff's noncompliance, while supported by substantial evidence, does not suffice as a clear and convincing reason

to reject his symptom testimony because the ALJ has failed to identify whether following through with his treatment plan would restore plaintiff's ability to work.

   **D.   *Summary***

As described above, the ALJ erred in discrediting plaintiff's subjective symptom testimony based on plaintiff's daily activities, conservative treatment, and noncompliance with diabetes treatment. The ALJ also observed generally that plaintiff's testimony was not "entirely consistent" with the record as a whole and summarized the medical record, but a general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In sum, the Court concludes that the ALJ erred by failing to provide specific, clear and convincing reasons supported by substantial evidence to reject plaintiff's symptom testimony.

**II.   *Medical/Non-Medical Opinion Evidence***

Plaintiff challenges the ALJ's decision to give partial weight to Edwin Weih's, PA, and Alexander Moreley's, MD, medical opinions.

Edwin Weih is a physician's assistant who treated plaintiff regularly, spending roughly forty to forty-five minutes at a time with plaintiff during office visits. Weih offered a letter opining about plaintiff's current and lifelong diagnosis and expected limitations. In the letter, Weih opined that plaintiff suffers from "difficult to control diabetes"; "unremitting pain in his legs and feet"; that plaintiff requires "periodic

rests during the day to relieve the pain in his lower back, legs and feet"; and that plaintiff's medications several medications can lead to unconsciousness, poor cognitive functioning, and sedation. Tr. 500-01. Dr. Moreley is an M.D. and cosigned Weih's letter opinion. It is unclear whether Dr. Moreley is one of plaintiff's treating physicians, as the record only shows evidence of him signing Weih's letter.

The ALJ gave "little weight" to both Weih and Dr. Moreley because (1) Weih reported that plaintiff was "truly disabled for the type of work that he has been doing" and needed period breaks throughout the day and Dr. Moreley cosigned this opinion; and (2) the opinions of Weih and Dr. Moreley are unsupported by the plaintiff's own reported daily activities. Tr. 23.

The ALJ erred in giving Dr. Moreley's opinion "little weight." The ALJ must explicitly reject medical opinions, or set forth specific, legitimate reasons for crediting one medical opinion over another. *Nguyen v. Chater,* 100 F.3d 1462, 1464 (9th Cir. 1996). An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison,* 759 F.3d at 1013.

First, the ALJ's assertion that Dr. Moreley signed off on Weih's opinion that plaintiff was "truly disabled" is not supported by the record. The letter cosigned by Dr. Moreley does not mention disability at all. Instead, Weih's assertion that plaintiff

is "truly disabled" can be found his notes from an office visit with plaintiff, but this opinion on disability appears nowhere else in the record.₃ Tr. 306.

Second, as stated above, the ALJ erred in rejecting plaintiff's subjective symptom testimony based on his daily activities. For the same reasons, plaintiff's daily activities are not a valid reason to reject Dr. Moreley's medical opinion.

The ALJ has not provided specific and legitimate reasons to reject Dr. Moreley's opinion in this case and has therefore erred in discrediting the opinion evidence.

"In addition to considering the medical opinions of doctors, an ALJ must consider the opinions of medical providers who are not within the definition of 'acceptable medical sources.'" *Revels*, 874 F.3d at 655; *see* 20 C.F.R. §§ 404.1502(a), (d); 416.902(a), (d). At the time of plaintiff's application, physician assistants were defined as "other sources," they were not considered acceptable medical sources and were entitled to less deference. Social Security Ruling 06-03p, 2006 WK 2329939, at *2 (Aug. 9, 2006). While not entitled to the same deference as an acceptable medical source, statements from other sources cannot be disregarded without comment. *Tobeler v. Colvin*, 749 F.3d 830, 833-34 (9th Cir. 2017). An ALJ may discount testimony from other sources if the ALJ gives germane reasons for doing so. *Molina*, 674 F.3d at 1111. Additionally, "[t]he ALJ is responsible for resolving conflicts in the

---

₃ In the letter written by Weih and cosigned by Dr. Moreley, Weih does stated that it is his opinion that plaintiff would "never be able to work an 8-hour day 5 days per week. By aptitude and education, he is only able to perform a physical job, and his current condition would not allow this." Tr. 501. This may be considered an opinion on disability, but the ALJ's decision only discusses Weih's statement that plaintiff is "truly disabled[.]" Tr. 23.

medical record." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ did not identify a germane reason for rejecting Weih's opinions. As noted, Weih's discussion of disability appears only once in the medical record, in Weih's notes after an office visit, and is not connected to Weih's opinion on plaintiff's abilities. And although inconsistency between a claimant's daily activities is a germane reason to discount the opinion of an "other" medical source, *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014), the record does not support the ALJ's finding that Weih's opinions were inconsistent with plaintiff's reported activities. *See Morgan*, 169 F.3d at 600; *Orn*, 495 F.3d at 639 (internal quotation marks omitted and alterations normalized) ("The ALJ must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination.").

### III.   *Lay Witness Statements*

Plaintiff's brother Vernon B. provided a third party function report where he discussed his brother's difficulties driving, difficulty sitting/standing for long periods of time, and that functionally plaintiff had difficulty "lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, seeing, using his hands, as well as completing tasks." Tr. 23, 254, 259.

The ALJ afforded "some weight" to plaintiff's lay witness statement from his brother. The ALJ reasoned that Vernon B.'s assertions about plaintiff's physical limitations were "not entirely consistent with the preponderance of medical and other evidence of record[.]" Tr. 23.

Lay witness testimony about the severity of a claimant's symptoms or how impairment affects a claimant's ability to work is competent evidence that an ALJ must consider. *Nguyen*, 100 F.3d at 1467. To reject such testimony an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r*, 807 F.3d 996, 1007 (9th Cir. 2015). "Inconsistency with medical evidence" is a germane reason for discrediting the testimony of lay witnesses. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). However, the reasons provided must also "specific." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011). Here, the ALJ's general statement about Vernon B.'s physical limitation testimony is not sufficiently specific to allow the Court to determine whether that reasoning is supported by substantial evidence. Accordingly, the ALJ erred in discrediting Vernon B.'s lay witness testimony.

## IV.   *Type of Remand*

Although reviewing courts generally remand to the agency for "additional investigation or explanation," *Florida Power & Light Co. v. Lorio*, 470 U.S. 729, 744 (1985); *see also Lingenfelter*, 504 F.3d at 1044 (the ordinary remand rule applies to Social Security cases), Congress has granted courts some additional flexibility in § 405(g) "to reverse or modify an administrative decision without remanding the case

for further proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1177–78 (9th Cir. 2000). The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Id.* at 1178. The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989). Under the Ninth Circuit's "credit-as-true" doctrine, I must undertake a three-step inquiry to make that determination. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

Under the three-step "credit-as-true" doctrine, the reviewing court must first determine whether the ALJ committed harmful legal error. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015), as amended (Feb. 5. 2016). Second, if the court finds such an error it must "review the record as a whole and determine whether it is fully developed, free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id.* (quotation marks omitted). Third, if the court does determine that the record has been fully developed, and there are no outstanding issues left to be resolved, the court must consider whether "the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Id.* (quotation marks omitted).

Here, the first step is satisfied because the ALJ (1) failed to provide specific, legitimate reasons to reject Edwin Weih and Dr. Moreley's opinions, (2) failed to

explain how plaintiff's activities of daily living transfer into working skills to discredit plaintiff's subjective symptom testimony, (3) failed to identify what parts of plaintiff's treatment were conservative and why, and (4) failed to give sufficiently specific reasons as to why plaintiff's statements were inconsistent with other evidence. The errors were not harmless because the limitations plaintiff testified to and that plaintiff's brother and treating physicians provided opinions on were not incorporated into the RFC, such as plaintiff's need for periodic rests. At the hearing, the vocational expert testified that if a claimant were to require frequent breaks, an employer would likely not tolerate it, therefore incorporation into the RFC may change plaintiff's disability status. An error cannot be considered harmless unless a reviewing court "can confidently conclude that no reasonable ALJ . . . could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050 (9th Cir. 2006) (finding that if testimony had been fully credited, a reasonable ALJ could find the claimant unable to return to gainful employment.)

At the second step, however, the record is not fully developed or free from conflicts and ambiguities. For example, at the hearing, the ALJ did not question plaintiff on his hobbies aside from rock hunting, which plaintiff claimed he was no longer able to do. Further, Weih and Dr. Moreley's were improperly weighted and contain limitations not addressed by the ALJ. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to

remand the case to the agency.") Accordingly, remand for further proceedings is the appropriate remedy.

## CONCLUSION

The Commissioner's decision is REVERSED and the case is REMANDED for further proceedings consistent with the Court's opinion.

IT IS SO ORDERED.

Dated this  30th  day of   March   2020.


_____/s/Ann Aiken_____
Ann Aiken
United States District Judge